MICHIGAN LOAN ASS'N v. CAHILL.

1. Contracts—Bills and Notes—Evidence—Presumptions.

Promissory note given by borrower to loan association licensed under Act No. 317, Pub. Acts 1921, to take place of usurious notes, is best evidence of transaction, and, in absence of showing to contrary, court will assume that it was voluntarily signed.

Waiver of usury by renewal or other executory agreement, see annotation in 13 A. L. R. 1213.

2. USURY—BILLS AND NOTES—SMALL LOANS—STATUTES.
    Where notes containing usurious charges were surrendered by
    loan association licensed under Act No. 317, Pub. Acts 1921,
    and new note given by borrower for amount of money actually
    borrowed with legal interest, it is free from taint of usury,
    and therefore valid and enforceable.

3. LICENSES—SMALL LOANS—FAILURE TO COMPLY WITH STATUTE—
    BILLS AND NOTES.
    Promissory note given by borrower to loan association licensed
    under Act No. 317, Pub. Acts 1921, for money borrowed with
    legal interest, is not void because of failure of association to
    deliver to borrower statement provided for in section 14 of
    said statute; no such intent being expressed in act.

Error to Jackson; Simpson (John), J.  Submitted
January 23, 1931.  (Docket No. 121, Calendar No.
35,430.)  Decided February 27, 1931.

Assumpsit by Michigan Loan Association of Jack-
son, Michigan, a corporation, against Edward J.
Cahill, Jr., and others on a promissory note.  Judg-
ment for plaintiff.  Defendant brings error.  Af-
firmed.

*Bisbee, McKone, Wilson & King,* for plaintiff.

*James J. Noon* and *C. G. Parshall,* for defendants.

McDonald, J.  This is an action on a promissory
note for $1,850 payable in three and a half years
with interest at seven per cent.

The plaintiff is licensed to conduct what is called
a small loan business under Act No. 317, Pub. Acts
1921, as amended by Act No. 181, Pub. Acts 1925
(3 Comp. Laws 1929, § 12198 *et seq.*).  The defend-
ant Edward J. Cahill, Jr., was engaged in the auto-
mobile business.  He was financed by the plaintiff
in various transactions, three of which are con-
nected with the note in suit.  In the first transaction,

the plaintiff loaned him $300 and took his note for that amount bearing interest at 3½ per cent. a month; in the second, it loaned him $600 and took his note for $726, the excess charged being what the plaintiff terms a "finance fee;" the third transaction involved a loan of $995. A finance fee of $205 was charged and a note taken for $1,200. As the result of a controversy over the payment of. these notes, the note in suit was given. It is the defendants' claim that, though this note appears to be fair and valid on its face, it is void and unenforceable for two reasons, first, because it embodies the three previous transactions which were usurious and void, and, second, because the plaintiff did not furnish the statement required by section 14 of the statute under which it was operating. It is the plaintiff's claim that failure to furnish such statement did not affect the validity of the note; that the note in suit did not carry over the usury with which the previous notes were tainted; that in fixing the amount, for the payment of which it was given, all usury was eliminated and only the actual loans were included, and, therefore, it is valid and enforceable. On the trial, at the close of the proofs, both parties moved for a directed verdict. The court granted plaintiff's motion. To review the judgment entered, the defendants brought error.

The statute under which the plaintiff is licensed to do business permits it to charge 3½ per cent. a month interest on loans of $300 or less, and not more than seven per cent. on loans above that amount. It further provides:

"If interest or charges in excess of those permitted by this act shall be charged, contracted for or received, the contract of loan shall be void and

the licensee shall have no right to collect or receive any principal, interest or charges whatsoever.''

As the plaintiff might legally charge 3½ per cent. interest a month on the $300 loan, that transaction was not usurious. But the interest charged on the other two notes was clearly usury and rendered them void and unenforceable either as to principal or interest. These notes were not paid. The parties got together in an agreement to settle the entire indebtedness for $1,850. The original notes were surrendered and a new note for $1,850 was executed by the defendants. In saying that the defendants agreed to give this note in settlement, we are not overlooking their claim that it was procured by threat. We find nothing in the record to support this claim. The note is the best evidence of the agreement, and, in the absence of any showing to the contrary, we will assume that it was voluntarily signed by the defendants. It is conceded that this new obligation does not contain any of the interest charges or so called financing fees of the previous transactions. Defendant Edward J. Cahill, Jr., so testified. The amount of the note represents only the actual sums loaned. All usury was eliminated.

In *Smith* v. *Stoddard,* 10 Mich. 148 (81 Am. Dec. 778), there was involved a usurious contract. The parties came to a settlement and a new obligation was given which included no usury. The court said:

''When parties have actually paid the usurious interest, and then come to a *bona fide* settlement, and make new securities which include nothing but an actual loan, and are not meant as mere evasions, we do not think the new contract can be regarded as either usurious in itself, or based on a usurious consideration.''

And in *Gladwin State Bank* v. *Dow,* 212 Mich. 521 (13 A. L. R. 1233), it was said:

"Courts have uniformly held that there may be such a settlement between the parties as purges the transaction of its usurious taint. What must be done to so purge the transaction is a matter upon which the authorities differ. One way of purging the contract of the usurious taint was pointed out in *Carr* v. *Taylor,* 62 N. Y. Supp. 849. * * * It is said in 39 Cyc. p. 1002:

" 'The general principle determining when an indebtedness infected with usury is to be deemed disinfected may be stated as follows: If the tainted obligation is with the full knowledge and consent of the borrower, finally canceled or abandoned, and a new obligation, containing no part of the usury, is executed in legal form, and supported solely by the moral obligation resting upon the borrower to pay the money actually received with legal interest thereon, such new obligation is valid and enforceable.' "

The note in suit was entirely purged of the usury adhering to the previous notes. The defendant Cahill was under no obligation to pay them. He abandoned them and consented to a new obligation in which he promised to pay the money he had actually borrowed with legal interest. In view of these facts, the new obligation does not fall within that provision of the statute which renders void all loans bearing an unlawful interest.

The defendants' second contention is that the note is void because the plaintiff did not comply with section 14 of Act No. 181, Pub. Acts 1925 (3 Comp. Laws 1929, § 12211), which reads:

"Every licensee shall: Deliver to the borrower at the time a loan is made, a statement in the English language showing in clear and distinct terms the amount and date of the loan and of its maturity, the nature of the security, if any, for the loan, the name and address of the borrower and of the licensee, and the rate of interest charged. Upon

such statement there shall be printed in English a copy of section thirteen of this act.''

Section 13 provides that the loan or security shall be void and unenforceable in case of excessive interest charges, but nowhere in the act is it indicated that the legislature intended to void the loan for failure to furnish the statement required by section 14. It surely was not intended to permit a borrower to escape the payment of a legal debt because such a statement was not furnished. It does not go to the substance of the transaction but was merely intended as evidence to the borrower that he was not assuming an obligation to pay unlawful interest. It was not a requirement that affects the validity of a loan.

We think the trial court correctly disposed of the issue in rendering judgment for the plaintiff for the money actually loaned with interest at 7 per cent.

The judgment is affirmed, with costs to the plaintiff.

BUTZEL, C. J., and WIEST, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.